THE TEXAS COMPANY (P.R.), INC., Plaintiff and Appellee, v. JUAN ESTRADA, Defendant and BERNARDO ALVAREZ SANTOS, Intervenor and Appellant.

No. 6923. Argued November 20, 1936.—Decided December 18, 1936.

*Arturo Aponte* and *R. García Cabrera* for appellant. *R. Castro Fernández* for appellee.

Mr. Justice Travieso delivered the opinion of the Court.

The Texas Co. (P.R.) Inc. brought an action to recover the sum of $2,617.86, for gasoline and other products sold to the defendant on a current account, and attached three automobiles owned by Juan Estrada. Bernardo Alvarez Santos filed a complaint in intervention in which he alleges that on June 13, 1932, the defendant executed a mortgage in favor of the intervenor on the three automobiles attached by the Texas Co., to secure a promissory note for $3,000 issued by the defendant in favor of the intervenor and which was to mature on June 13, 1933. The mortgage was recorded in the Registry of Chattel Mortgages of Caguas. The intervenor alleges that neither the mortgage nor the interest for the semester payable in advance on December 14, 1932, has been paid; that the plaintiff has not deposited the amount of the said mortgage and interest with the clerk of the district court, as provided by Act no. 71 of 1930 (Laws, p. 448), and that for these reasons the attachment should be vacated and the marshal ordered to return to the defend-

ant the three automobiles attached, until the plaintiff should deposit the amount of the mortgage held by the intervenor.

In its answer to the complaint in intervention, the plaintiff company alleges that the mortgage contract and the promissory note secured by it are simulated, null and nonexistent for lack of *causa* or consideration, because the intervenor had not loaned any amount to the defendant Juan Estrada, and that the entry of the said mortgage should be cancelled·in the Registry.

The lower court, by its Acting Judge, Hon. Tomás Torres Pérez, decided "that the case involves a simulation carried out between the defendant Juan Estrada and the intervenor, by means of the execution of a mortgage to secure a loan which has not been proved; it does not appear from the deed that the creditor delivered any sum of money to the debtor, but it is merely stated in the document that the money had been received before the promissory note was executed"; and dismissed the complaint in intervention and sustained the validity of the attachment levied by the plaintiff. This appeal was taken from that judgment, the only error assigned being the following:

"That the District Court of Humacao erred in holding that the chattel mortgage executed by Juan Estrada in favor of the appellant Bernardo Alvarez Santos, and the promissory note which the said mortgage secured, were null and void because executed in fraud of creditors."

What is actually imputed to the lower court is that it ordered the rescission of a contract between a debtor and a third party on the ground that it was made in fraud of creditors, without an averment and a showing of fraud, or in other words, that the evidence presented is insufficient to support the judgment appealed from. This requires us to make a detailed examination of the evidence.

The intervenor presented in evidence a copy of the chattel mortgage contract, with a note of its record in the registry, and the promissory note secured by it, which states that

the $3,000 were received by Juan Estrada in cash, as a loan, before its execution.

The plaintiff offered the following testimony:

Carlos del Río, Manager of the National City Bank in Caguas, testified that the records of the bank do not show that Bernardo Alvarez Santos had any account with the said bank, or that he had made any loan to the defendant, or that he had discounted any paper bearing his signature.

Antonio Grillo, Municipal Auditor of Caguas, testified that on the pay roll of the Municipality, which is in his charge, the name of Bernardo Alvarez Santos appears as an inspector of Public Sanitation from August, 1930, to May, 1931, at a weekly salary of $12.64.

Juan Cebollero, agent of The Texas Co. in Caguas, testified that he does not know the intervenor; that the latter is married to a sister of the defendant's wife, and they are therefore brothers-in-law; that on June 13, 1932, the defendant owed money to The Texas Co.; that he never received any check, promissory note or voucher signed by the intervenor; that the witness went to the registry and there was only one mortgage recorded there in favor of the intervenor; that he knows of no property belonging to the intervenor; that the defendant Estrada made monthly payments on account to The Texas Co. Upon cross-examination by the attorney for intervenor he testified: That he had not spoken to the intervenor, he does not know where the latter lives and does not know his wife; that he could not say what amount Estrada owed the Texas Co. on June 13, 1932, but after examination of a current account he can say that it was $1,970.85; that this account is secured by a mortgage for $1,200 on a house belonging to Estrada, which was executed on June 26, 1931 and is still in force.

The plaintiff presented a certificate of the registrar which shows the entry of the mortgage on the three automobiles and, in addition, that the books of the registry do not show

any other property or right in favor of the intervenor Alvarez Santos.

From the opinion rendered by the trial judge we copy the following:

1. That although the mortgage and the interest were due since December, 1932, the intervenor did not start foreclosure proceedings and permitted the property to be attached by the plaintiff in March, 1933, allowing 90 days to pass without taking any steps to make the mortgage effective.

2. That there is no evidence whatever as to the actual delivery of the amount of the loan by the intervenor to the defendant.

3. That when the defendant settled his account with the Texas Co., in December, 1932, and accepted the debt of $2,495.46, the mortgage in favor of the intervenor was already due.

The trial judge is of the opinion that the facts which we have just enumerated give rise to a strong presumption that the execution of the promissory note was a simulation made with the sole object of saving for the defendant the automobiles attached later by the plaintiff; that if the mortgage security had been real and effective the mortgage would have been foreclosed by the date of the attachment and of the intervention; and that the facts proved are evident symbols of fraud.

The conclusions of law reached by the trial court are indefensible. They are not based on sufficient and unquestionable evidence, from which the legal presumption that the transaction attacked is invalidated by fraud would arise as an inevitable consequence.

The legal doctrine dealing with the allegation of fraud as the basis of a cause of action or as a defense, is stated as follows in Corpus Juris:

"The general rule is that fraud 'which is criminal in its essence,' and involves moral turpitude at least, is never presumed, but must be affirmatively proved. That is to say, in actions at law and where a charge of actual fraud is involved in suits in equity, 'not only is fraud never presumed, but it must be affirmatively alleged and proved by the party who relies upon it, either for the purpose of attack or

defence.' Conversely, a party is not bound to disprove fraud not directly or constructively proved by the party alleging it. The presumption, if any, is against the existence of fraud, and in favor of innocence, honesty, and fair dealing. While it is the almost universal custom for courts to declare that fraud is never presumed, a more accurate statement, sometimes made, is that 'the law never presumes fraud.' "

The citation which we have just made is sustained by numerous decisions which we consider it unnecessary to examine in detail. Among the cases cited is that of *Mancheño* v. *Le Brun,* 14, P.R.R. 461 in which this Supreme Court said:

"The error and deceit vaguely insinuated by the appellants are in no wise deduced from the document itself, as alleged, and such grounds of nullity which vitiate consent are never presumed but must be proved, which has not even been attempted by the party on whom the burden of such proof rested, said party being the one that attacks the validity of the contract, which the adverse party maintains *in toto.*"

In decisions subsequent to the case of *Mancheño* v. *Le Brun, supra,* this court has recognized an applied the general rule that fraud is never presumed and that he who alleges it must prove its existence with incontestable facts, since the existence of fraud cannot be considered as established by mere conclusions, conjectures and suspicions, and that the evidence showing fraud must be solid, clear and convincing. See: *Ana María Sugar Co.* v. *Castro,* 28 P.R.R. 225; *Gómez* v. *Bravo et al.,* 34 P.R.R. 141; *Ortiz* v. *Clausells et al.,* 34 P.R.R. 509; *Suc. of Igaravídez* v. *Rubert Bros.,* 23 P.R.R. 272; *Arenas* v. *Batalla,* 48 P.R.R. 30.

In the instant case, the plaintiff did not make a specific allegation of fraud. It merely alleged, in answer to the complaint in intervention, on information and belief, that the promissory note and the mortgage in favor of the intervenor are simulated, null and non-existent for lack of consideration. It was not alleged in any way that the mortgage and the promissory note were executed for the purpose of

defrauding the plaintiff, as a creditor of the defendant, or that the plaintiff could in no other way recover the amount owed to it by the defendant.

We share to a certain extent the doubts awakened in the mind of the trial judge by this case, as to the reality or the legal existence of the mortgage which the intervenor claims. But those doubts, those conjectures or deductions, which are born of experience and of the knowledge of human weaknesses, acquired in the course of judicial life, and which in the present case are not supported by any specific fact, cannot give rise to or serve as the basis for the legal presumption that the mortgage was made for the purpose of defrauding the plaintiff creditor.

Our attention has not been called to any rule or provision of law which authorizes us to presume that a chattel mortgage executed as security for a promissory note is fraudulent, and as such void, merely because the promissory note secured by it states that the amount of the loan was received by the borrower before the date of the promissory note and not at the time it was issued. The intervenor, as the holder of the negotiable instrument, which is the principal obligation, is favored by the legal presumption that the promissory note is valid and that it was executed for a good and valuable consideration. See: Section 25 of the Negotiable Instruments Act (Act No. 17, Laws of 1930, p. 182).

The plaintiff, who requests that they be declared void and non-existent, has the burden of proof to justify its allegation that the promissory note and mortgage have no legal force for lack of consideration and because they were made in fraud of creditors.

Has the plaintiff sustained the burden of proof? We believe that it has not. We are of the opinion that what the lower court calls "established facts", that is that the intervenor had no account with the National City Bank in Caguas; that he was a municipal employee for two years previous to the date of the mortgage, at a small salary; that

the intervenor and the defendant are brothers-in-law; and that the former had no property recorded in the Registry of Caguas except the mortgage in question, are not a sufficient basis for the deduction, as a conclusion of law, that the mortgage is fraudulent. All those facts, assuming that they were established by the evidence, are perfectly compatible with the validity of the mortgage. The fact that the intervenor did not have an account with the bank, is not proof that he did not have elsewhere the amount necessary to make the loan to the defendant. The same may be said of the fact that the intervenor was earning a small weekly salary two years before the loan was made. The relationship by marriage between the intervenor and the defendant, assuming that it was established, could at most be considered a suspicious circumstance, but it is not sufficient in itself to justify a declaration of nullity. See *Calzado* v. *Carrero,* 15 P.R.R. 340; *Moral & Co.* v. *Diez,* 16 P.R.R. 314; *González* v. *López,* 46 P.R.R. 814. The citation from Corpus Juris made by the appellee, 27 C.J. Sec. 717, contains a wise doctrine which would greatly aid its contention if the necessary basis for applying it had been established.

We will copy the citation so that its inapplicability to the instant case may be clearly seen: ·

"Where the parties to the transfer are related to each other, *this fact in connection with other facts* may be sufficient to raise a presumption of fraud and shift the burden of proof to the transferee to show good faith on his part in accepting the transfer; and it has been held that only slight evidence is required to shift the burden of showing the good faith of the transaction. ·A presumption of fraud is raised and the burden of proof of showing good faith impose on the transferee where, *in connection with the facts of relationship, other facts appear such as the insolvency or embarrassed circumstances of the party making the transfer.*" (Italics ours.)

In the present case there is no allegation whatever, nor was evidence presented by the plaintiff, in relation to the solvency or insolvency of the defendant before, at the time, or after the latter made the promissory note and the mort-

gage. Nor does it appear from the evidence that the financial condition of the defendant was at that time, or at any subsequent date difficult or embarrassing. The evidence rather shows the contrary, since it appears that the defendant was the owner of another property, on which he executed a mortgage to secure $1,200 of his debt to the plaintiff; that he had a gasoline business in Caguas; and that he enjoyed credit with the plaintiff until February 4, 1933, the date on which the plaintiff made its last delivery of merchandise charged to his current account.

We should establish an extremely dangerous precedent if we were to hold that it is sufficient to prove that the mortgage debtor and creditor are related to each other, for the creditor of the former to have the right to the presumption that there has been fraud in the transaction and to a judgment setting aside the mortgage contract. The cases require something more than the simple proof of relationship, which is the only evidence which has been presented in this case.

The cases decided by this court hold that in order that an action of the nature involved in this case may prosper, the plaintiff, that is, the party who alleges fraud, must prove: (a) the existence of a debt in his favor; (b) that his debtor transferred his property for the purpose of defrauding him; (c) that he has been prejudiced by the transfer; and (d) that he has no other legal remedy to recover his credit. See: *Domenech* v. *Rola*, 9 P.R.R. 85; *Vázquez* v. *Martínez*, 10 P.R.R. 429; *Suc. of Almazán* v. *López* 20 P.R.R. 502; *Martínez* v. *Cosío & Primo*, 38 P.R.R. 216 and *González* v. *López, supra*. Neither the allegations of the answer, nor the evidence presented by The Texas Co., fulfill the requirements which we have enumerated. No allegations whatever has been made, nor has any evidence been presented, to the effect that the defendant had no other assets from which the credit of the plaintiff could have been collected.

The judgment appealed from must be reversed and another rendered in its place by this court holding the attach-

ment levied on the mortgaged property to be null and void, because it was not levied in accordance with the provisions of Act No. 71 of 1930 (Laws, p. 448).

Mr. Chief Justice Del Toro took no part in the decision of this case.